UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KERMITT JOE BERNHART                          CIVIL ACTION

VERSUS                                        NO. 15-1800

MARLIN GUSMAN ET AL.                          SECTION "N" (2)

## <u>REPORT AND RECOMMENDATION</u>

At the time of filing this complaint, plaintiff Kermitt Joe Bernhart was a prisoner incarcerated in the Orleans Parish Prison system ("OPP").[1]  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman, Major K. Winnfield, Lt. Sims, Lt. Ruez, Lt. Jackson, Lt. Givens, Lt. Holmes and Captain Gibbons.  Bernhart alleges that while incarcerated in OPP, he was stabbed by other inmates in two separate incidents, subjected to unconstitutional conditions of confinement and a strip search and provided with inadequate responses to his grievances.  He seeks monetary damages and injunctive relief.  Record Doc. Nos. 5 (Complaint at ¶¶ IV and V) and 6 (Supplement to Complaint).

On August 11, 2015, I conducted a telephone conference in this matter. Participating were plaintiff pro se; Charlin Fisher, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

---

[1]The court was advised by staff of the Hunt Correctional Center that plaintiff is now incarcerated in that facility.

## THE RECORD

Bernhart testified that, at the time of the conference, he was incarcerated in OPP as a pretrial detainee, awaiting trial on charges of second degree murder, two counts of attempted second degree murder, possession of contraband in jail and aggravated battery. He said he was scheduled for jury trial on August 17, 2015.[2]  Plaintiff confirmed that he asserts four kinds of claims in this case: (1) he was stabbed twice by other inmates while incarcerated in OPP; (2) the jail is infested with mold; (3) he was improperly strip-searched; and (4) he did not receive proper responses to his grievances at OPP.

As to the stabbings, Bernhart testified that the first occurred on December 9, 2013[3] in OPP, when his right hand was stabbed by another inmate named Ravenel Williams. Plaintiff stated that he "was being molested in the shower" by Williams and another inmate whom he new only by the nickname "J-Real."[4]  Bernhart said one of his attackers was a convicted rapist who liked raping people.  Plaintiff testified that the attack occurred at about 7:30 p.m., and other inmates in the area at the time intervened to help him fight

---

[2]Research by my staff with Hunt Correctional Center and the Orleans Parish Sheriff's Office Automated Inquiry System indicates that, after trial by jury, Bernhart was found guilty of manslaughter and sentenced to 27 years in prison on October 14, 2015 in Orleans Parish Criminal District Court, Case No. 515118.

[3]Initially, this first stabbing was erroneously stated to have occurred in 2014. Bernhart's later testimony and the written record in the case, including particularly the verified medical records, are clear that this earlier stabbing in fact occurred in December 2013.

[4]"J-Real" has been identified by name as Jasmine Perry in an indictment in this court charging him with being a gunman and killer in a violent gang known as the 39ers involved in murder and other alleged offenses in furtherance of drug-trafficking. United States v. Price et al., Crim. No. 15-154, Record Doc. No. 1 (Indictment).

off the attack.  Plaintiff said that in the resulting melee, he took the knife that Williams had used against him and used it himself to stab Williams and J-Real.

Bernhart explained that when other inmates intervened in the attack by Williams and J-Real, "they made it look like a big old brawl in the dayroom because everyone was trying to stop them [his attackers] from what they were doing, and the deputies seen that, and it wasn't what it looked like at all."  Thus, Bernhart alleged, Williams and J-Real had made it appear to the deputies that all the inmates, including himself, were taking part in a jailhouse brawl, when in fact he and the other inmates who helped him had acted in self-defense.  Bernhart stated that Williams told him that he would make sure all the inmates were charged in the melee, "since ya'll don't want to let me rape them guys, everyone's gonna get a charge."  Bernhart said he asked inmates and deputies not to tell anyone that he had been molested because he did not want to become known as a jailhouse "punk," knowing he had to remain incarcerated in OPP while facing his charges.

Bernhart testified that Williams and J-Real "kinda snuck up on me and attacked me."  He stated that he had no reason to believe before the attack that Williams and J-Real would do anything against him, and he knew from his past experience in jail that inmates like J-Real and Williams would not say anything to anyone about such an attack before attempting it.  He testified that the shower was located within the day room, and the other inmates were able to see the attack as it began, and they tried to stop it.

3

Plaintiff confirmed that it must have appeared to the deputies working the tier that night, including Deputy Tapp and Sgt. Miguel, that the inmates had all become involved in and were all responsible for the brawl. Asked if he thought the deputies had done anything wrong in connection with the incident, Bernhart stated that "from my understanding, . . . Deputy Tapp . . . . just saw what was happening" and "when all the police came onto the tier, that's when I stopped" and handed over the knife to the officers. Bernhart confirmed that he had not named Tapp or Miguel as defendants and that he did not intend to accuse them of having violated his rights or to sue them. He explained that his aim was simply to show that he had been stabbed and then acted in self-defense, and "I don't want the humiliation throughout the jail; me having to live here throughout my charges and everyone calling me a punk and all those things."

As to the second stabbing, Bernhart stated that it occurred on December 14, 2014, about a year after the first incident. He stated that there was another inmate, whose name he did not know, with whom Bernhart had previously been involved in two or three fights, "and I told the guy I don't want to fight with him no more, he couldn't beat me . . . ." Bernhart said that he had already beaten this other inmate in their previous two or three fights that occurred on the day or two before the second stabbing incident. He testified that on the day of the second stabbing, he told this other inmate that he did not want to fight him anymore and that the other inmate could not beat him. "I guess [this other inmate] couldn't take that he couldn't beat me," he said. Bernhart testified that at

4

feeding time, the other inmate approached Bernhart in his cell and stabbed him under his eye and other places and kept trying to stab him.  Bernhart said he responded, again fighting to defend himself, by chasing the other inmate out of his cell into the day room, where the deputies saw all the blood and broke up the chase.  He identified the ranking deputy on the scene as Lt. Washington.

Asked if he was alleging that any of the deputies did something wrong in connection with this second stabbing, Bernhart said, "No, sir.  From what I know, the deputy, he seen what was happening, and he said, 'hey, man, ya'll chill,' and he called for backup, and that's what he was supposed to do, call for backup . . . ."  Bernhart said that he was not charged with anything based on this second stabbing, and that he was taken to the hospital for medical treatment.  Bernhart said that his complaint is not that the deputies had done anything wrong in connection with the stabbings, but that he "felt humiliated" by being stabbed in the jail and subjected to the kinds of negative reputation that would spread around the jail as a result of the incidents, even though he was just trying to defend himself.

As to his claim concerning the conditions of his confinement in the jail, Bernhart said that his claim involves mold throughout the old OPP building, where he has been held during his entire period of incarceration.  Bernhart testified that "I've been breathing in this manifested mold for 34 months."  He said the mold is "growing from the ceilings,

throughout the whole facility, on the tiers, . . . in the showers, mold everywhere." He stated that the conditions are not liveable.

Asked if any attempts are made to clean the mold, Bernhart replied, "Yes, sir. I try to clean it all the time. I get cleanup supplies. Clean it. But it grows right back." He said OPP personnel provide him with cleaning supplies, including "mold cleaner and stuff," but it grows right back. He said he tried to clean the mold on the ceilings at least two or three times, that he cleans the shower every Sunday, and that other inmates also regularly try to clean the mold, but it always comes back. Bernhart testified that even though the mold goes away after cleaning, it comes back, just like grass grows back after being cut.

Asked if the mold caused him any medical problems, Bernhart said that he has both Hepatitis C and maybe liver failure, and he knows the mold is not good for his breathing conditions. He said he had both medical conditions before he entered the jail, but he feels that the mold makes these conditions worse. He confirmed that he has received medical treatment inside OPP for his Hepatitis C, including "everything they could do toward that situation." As to the mold, however, he complained that "I have to inhale it, . . . I have to breathe it in," and he expressed the opinion that breathing in mold spores from the air is particularly bad for his preexisting liver failure condition.

As to his claim that he was improperly strip-searched on April 15, 2015, Bernhart testified that the search was conducted by Lt. Givens of SOD ("Special Operations

6

Department").  He stated that all the inmates housed on the tier with him on that date were taken outdoors to the recreation area, where all the inmates were told to strip while in the yard, causing them all to suffer "indecent exposure."  He said that a total of about 30 inmates were involved in the strip-search.  He explained that the deputies transferred the inmates from inside the tier to the outdoors recreation area so that the deputies could search the tier while the inmates were outside for security reasons, including probably searching for weapons or other contraband prohibited in the jail.  He confirmed that the searches were conducted <u>after</u> the two stabbing incidents about which he also complains.

Bernhart explained that his complaint was that the strip search should have been conducted indoors, not outside where other inmates looking out the windows of their cells could see him naked.  He stated that "we were just taken outside in the yard, . . . they searched our clothes and stuff, and they took us back to the tier."  He testified that the strip search resulted in <u>no</u> physical injury to him.

As to his final claim, Bernhart complained that he filed grievances concerning the stabbings, the mold and the strip search through the OPP inmate grievance procedure, asking for a full investigation of his complaints.  He said that in response to his grievances, Lt. Givens called him to his office to ask him about his complaints, but Lt. Givens did nothing, except return the written grievances to Bernhart upon request, so that Bernhart could proceed through the remainder of the grievance procedure and file this lawsuit.  Bernhart said that Major Winfield also came to see him about the grievances,

but the major failed to answer the grievances adequately.  He said both officers were "trying to neglect" his grievances, in that they did nothing to investigate them or address them in any way.  "They were trying not to answer the grievances, . . . but . . . they answered the grievances the best way that they can, and I proceeded with this lawsuit." He explained that they had responded, but he was not satisfied with the response.

Addressing each defendant separately, Bernhart said that he had named Sheriff Gusman as a defendant because he is responsible for OPP operations overall, and "everything that's going on is on his behalf."  He conceded that the sheriff had not been directly involved in any of the events about which he complains.  He stated that Major Winfield not only failed properly to respond to his grievances, but also is responsible because he is the warden of the old jail building.  He testified that defendant Lt. Sims did "nothing," but he was the "ranking officer" when these events took place.  He said defendant Lt. Ruiz is now a captain who was also sued because he is a supervisor. Bernhart said he does not know who Lt. Jackson is and did not intend to sue anyone named Jackson.  He identified defendant Lt. Augustus as an SOD deputy who was present at the strip search in a supervisory capacity.  He stated that Lt. Givens (sometimes erroneously referred to as Gibbons) was also present at the strip search as a supervisor and that he also failed properly to respond to Bernhart's grievances.  He identified defendant Lt. Holmes as a ranking officer who was a supervisor of the jail, but who did not directly participate in the strip search.

8

On cross-examination, Bernhart stated that he has no other documents to submit in support of his claims and that he feels "more than able" to represent himself. He also confirmed that he has received the medical records I ordered the sheriff to produce, Record Doc. Nos. 9 and 25, and that they are accurate, including their documentation that he was stabbed on two different occasions in OPP. He stated that the medical records are correct in recording that the first stabbing occurred on December 4, 2013, and the second one occurred about a year later on December 9, 2014.

## ANALYSIS

As an initial matter, the court specifically commends Bernhart for his straight forward, non-hyperbolic, unburnished and clearly truthful presentation of his testimony. The conditions and violence he credibly describes as having occurred in the old building of OPP during his incarceration are both regrettable and clearly ring true in light of the other proceedings concerning the Orleans Parish Prison system that are ongoing in this court.[5] The question for the court in this case, however, is not whether the events and conditions he describes are abhorrent when judged against personal standards – his or mine – but whether they rise to the level of a violation of his constitutional rights under binding precedent.

---

[5]The HOD unit of OPP was closed by the Orleans Parish Sheriff in 2012 in connection with consent decree negotiations between the United States Justice Department and the Sheriff concerning overall conditions of confinement at OPP, all of which is the subject of a lawsuit pending separately in this court. Jones et al. v. Gusman et al., C.A. No. 12-859 "I"(5).

I.      STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are

10

clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83;

Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and

42 U.S.C. § 1997e(c)(1), either as legally frivolous, because his claims lack an arguable

basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis

of his claims.  Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing,

fails to state a cognizable claim of violation of his constitutional rights under the broadest

reading.[6]

II.   <u>TWO STABBING INCIDENTS</u>

(A)   <u>DECEMBER 4, 2013 STABBING INCIDENT</u>

Bernhart testified initially that the first stabbing occurred in 201<u>4</u>. His later

testimony and the written record in the case, including particularly the verified medical

records, are clear that this earlier stabbing in fact occurred in December 201<u>3</u>.  It is

therefore prescribed.

The district court may raise the limitations or prescription issue sua sponte in a suit

filed in forma pauperis under 28 U.S.C. § 1915.  <u>Wilke v. Meyer</u>, 345 F. App'x 944, 945

(5th Cir. 2009); <u>Lopez-Vences v. Payne</u>, 74 F. App'x 398, 2003 WL 22047325, at *1

(5th Cir. 2003) (citing <u>Gartrell v. Gaylor</u>, 981 F2d 254, 256 (5th Cir. 1993)).  "'Dismissal

is appropriate if it is clear from the face of the complaint that the claims asserted are

---

[6]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

barred by the applicable statute of limitations.'"  Stanley v. Foster, 464 F.3d 565, 568

(5th Cir. 2006) (quoting Harris, 198 F.3d at 156).

The first stabbing incident upon which Bernhart bases his claims occurred on

December 4, 2013.  He filed his complaint in this court more than one year later, on May

27, 2015.  Record Doc. No. 5 (Complaint).  Even if the mailbox rule applicable to

prisoner suits was applied, his current lawsuit would be deemed filed in this court on

April 23, 2015, the date he signed his complaint, Record Doc. No. 5 at p. 6, and could

have placed it in the mail, which is more than 16 months after the first stabbing incident.

Although Section 1983 has no statute of limitations, the one-year Louisiana

prescription statute, Louisiana Civil Code article 3492, applies to suits brought in federal

court under Section 1983.

> Because there is no federal statute of limitations for § 1983 claims, the
> district court looks for comparison to the forum state's statute of limitations
> for personal injury claims.  In Louisiana, personal injury claims are
> governed by La. Civ. Code Art. 3492, which provides for a prescriptive
> period of one year from the date of injury or damage.

Duplessis v. City of New Orleans, No. 08-5149, 2009 WL 3460269, at *4 (E.D. La.

Oct. 26, 2009) (McNamara, J.) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007);

Wilson v. Garcia, 471 U.S. 261, 275 (1985); Jacobsen v. Osborne, 133 F.3d 315, 319 (5th

Cir. 1998); Moore, 30 F.3d at 620; Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989));

accord James v. Branch, No. 07-7614, 2009 WL 4723139, at *10 (E.D. La. Dec. 1, 2009)

(Duval, J.) (citations omitted).

Federal law determines when a Section 1983 claim accrues.  <u>Jacobsen</u>, 133 F.3d at 319.

> For purposes of calculating the limitations period, a § 1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action.  The Supreme Court has held that prescription begins to run at the point when "the plaintiff can file suit and obtain relief."

<u>Duplessis</u>, 2009 WL 3460269, at *5 (quoting <u>Wallace</u>, 549 U.S. at 388) (citing <u>Jacobsen</u>, 133 F.3d at 319; <u>Gonzales v. Wyatt</u>, 157 F.3d 1016, 1020 (5th Cir. 1998)); <u>accord</u> <u>Dixon v. Cooper</u>, 260 F. App'x 728, 729 (5th Cir. 2007); <u>Piotrowski v. City of Houston</u>, 51 F.3d 512, 516 (5th Cir. 1995).  Determination of when plaintiff knew or should have known of the existence of a possible cause of action has two factors:  "(1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions."  <u>Id.</u>; <u>accord</u> <u>Dixon</u>, 260 F. App'x at 729.  In the instant case, as a direct participant in the attack about which he complains, occurring on December 4, 2013, there is no question that Bernhart knew about the attack when it occurred.

The date when the clerk of court receives the complaint, rather than the formal filing date, usually establishes the time of filing in forma pauperis complaints.  <u>Martin v. Demma</u>, 831 F.2d 69, 71 (5th Cir. 1987).  However, in the pro se prisoner context, a "mailbox rule" applies, so that the date when prison officials receive the complaint from the prisoner for delivery to the court is considered the time of filing for limitations purposes.  <u>United States v. Petty</u>, 530 F.3d 361, 363 & n.1 (5th Cir. 2008); <u>Stevenson v.</u>

15

Anderson, 139 F. App'x 603, 604 (5th Cir. 2005); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).

As noted above, the earliest date on which prison officials could have received Bernhart's complaint for delivery to this court is April 23, 2015, when he signed and dated his complaint and its attachments.  Record Doc. No. 5 at p. 6.  Giving Bernhart the benefit of every doubt, his complaint is therefore considered filed and this action commenced on April 23, 2015, for limitations purposes under the mailbox rule.

In addition to applying the forum state's statute of limitations, federal courts should give effect to any applicable tolling provisions provided by state law.  Lopez-Vences, 74 F. App'x at 398; Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002); Gartrell, 981 F.2d at 257.  The running of prescription under Louisiana law may be suspended or tolled for equitable reasons, which have been expressed in the civilian legal principle of contra non valentem.  Under this theory, there are four situations in which the one-year prescriptive period for delictual actions will not run:  (1) if there was some legal cause that prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action, (2) if there was some condition coupled with the contract or connected proceeding that prevented the creditor from suing or acting, (3) if the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action, and (4) if the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.  Dominion

16

Explor. & Prod. Inc. v. Waters, 972 So. 2d 350, 358 (La. App. 4th Cir. 2007) (citing Wimberly v. Gatch, 635 So. 2d 206, 211 (La. 1994); Plaquemines Parish Comm'n Council v. Delta Dev. Co., 502 So. 2d 1034, 1054-55 (La. 1987)).  Thus, the "doctrine of contra non valentem recognizes that in limited circumstances prescription should not run if good cause exists as to why plaintiff would have been unable to exercise or was lulled into not exercising a cause of action when it first became exigible."  Pracht v. City of Shreveport, 830 So. 2d 546, 551 (La. App. 2d Cir. 2002).

In this case, Bernhart's complaint may be deemed filed under the mailbox rule applicable to prisoner complaints on April 23, 2015. Accordingly, the one-year prescriptive period applicable to Section 1983 claims bars all claims about which Bernhart knew or had reason to know before April 23, 2014, one year before the filing date.  This claim in Bernhart's complaint involves and arises from a December 4, 2013 attack.  As a participant in the alleged incident, Bernhart clearly knew about the incident and his injuries at the time they occurred, and well before the prescriptive period lapsed.

Bernhart has provided no reason, and I can conceive of no basis on which, the doctrine of contra non valentem or equitable tolling might apply to the first stabbing.  For example, there is no legal cause that prevented the courts from taking cognizance of or acting on Bernhart's action; there is no condition coupled with the connected proceeding that prevented plaintiff from acting in a timely manner; defendants did nothing to prevent

Bernhart from availing himself of his cause of action; and the cause of action was known or reasonably knowable to Bernhart.

(B)    <u>DECEMBER 9, 2014 STABBING INCIDENT</u>

As to the second stabbing incident, Bernhart stated that on December 9, 2014, at feeding time, another inmate approached him in his cell and stabbed him under his eye and other places and kept trying to stab him until deputies intervened.   Bernhart identified one inmate who attacked him as Ravenel Williams, but he did not know the other inmate by name.

(1)    <u>Other Inmates Are Not State Actors</u>.

To be successful under Section 1983, a plaintiff must establish that a defendant has acted under color of state law in violating his rights.  <u>Daniels v. Williams</u>, 474 U.S. 327 (1986).  To state a claim under Section 1983, a plaintiff must show (1) deprivation of a right, privilege or immunity secured by the federal laws or Constitution (2) <u>by one acting under color of state law</u>.  <u>James v. Texas Collin County</u>, 535 F.3d 365, 373 (5th Cir. 2008); <u>Calhoun v. Hargrove</u>, 312 F.3d 730, 734 (5th Cir. 2002); <u>Mississippi Women's Med. Clinic v. McMillan</u>, 866 F.2d 788, 791 (5th Cir. 1989).  Thus, plaintiff must show that Carollo's actions are "fairly attributable to the state."  <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988); <u>accord</u> <u>Johnson ex rel. Wilson v. Dowd</u>, 305 Fed. Appx. 221, 2008 WL 5212795, at *2 (5th Cir. 2008); <u>Cornish v. Correctional Servs. Corp.</u>, 402 F.3d 545, 549 (5th Cir. 2005).

The law is clear that under no circumstances can the two inmates who attacked plaintiff be considered state actors for Section 1983 purposes as a matter of law. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Small v. Dallas County, 170 Fed. Appx. 943, 2006 WL 925500, at *1 (5th Cir. 2006) (citing Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996) (private attorney)); Mills v. Criminal Dist. Ct. No. 3, 837 F.2d 677, 679 (5th Cir. 1988)); Lavergne v. Martinez, No. 13-CV-2121, 2014 WL 897837 at *4 (W.D. La. March 6, 2014) (complaining witness); Shadley v. Biloxi Police Dept., No. 08-CV-0083, 2008 WL 4861984 at *2 (S.D. Miss. Nov. 10, 2008) (same).

The actions of these inmates upon which plaintiff bases his claims were clearly taken as private persons not in any official capacity authorized by the State. Although Bernhart has not formally identified these inmates as defendants, to whatever extent they might be considered, they are not state actors, and any Section 1983 claims against them would have no basis in federal law.

(2)   Failure to Protect

Bernhart's allegations concerning the non-prescribed stabbing incident conceivably implicate defendants' constitutional obligation to protect prisoners from harm.

Bernhart was a pretrial detainee on the date of the December 14, 2014 incident on which he bases this claim. In Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), however, the Fifth Circuit held "that the State owes the same duty under the Due Process

Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including . . . protection from harm, during their confinement."  Id. at 650. Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such as those alleged by Bernhart in this case.  Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650.  Here, nothing more than episodic acts or omissions of jail officials have been alleged. For the following reasons, plaintiff fails to state a claim of violation of his constitutional rights cognizable under Section 1983 in the particular circumstances of this claim.

Prison officials have a duty to protect inmates from harm or violence by other inmates and to take reasonable measures to protect their safety.  Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hare, 74 F.3d at 650; Williams v. Hampton, 2015 WL 4546858, at *2 (N.D. Miss. July 28, 2015).  The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates.  Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm.  Farmer, 511 U.S. at 834; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, plaintiff must establish that defendants possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Newton, 133 F.3d at 308. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citing <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (additional citations and footnote omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291.

As to the second stabbing incident, Bernhart was specifically asked during his <u>Spears</u> testimony whether any of the deputies who are defendants in this matter had done anything wrong.  He expressly responded in the negative.  Bernhart acknowledged that the responding deputy ordered the other inmate to "chill" and immediately called for backup, which is what the deputy "was supposed to do."  Under these circumstances, Bernhart has failed to alleged the requisite elements of deliberate indifference and cannot state a cognizable Section 1983 claim for failure to protect him from a known risk of harm.

III.    <u>CONDITIONS OF CONFINEMENT</u>

Plaintiff's testimony confirmed his written allegations concerning unsanitary conditions during his incarceration in OPP.  Bernhart was a pretrial detainee at all times that form the basis of his claims in this case.  Regardless whether an inmate is a pretrial

detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  McCarty v. Zapata County, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare v. City of Corinth, 74 F.3d 633, 636 (5th Cir. 1996)); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).

In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice."  Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104

(1976), applies.  Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Bernhart's allegations do not rise to the level of violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety.  Farmer, 511 U.S. at 847.  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof at a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added).   "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

Bernhart's written allegations and testimony meet neither of these two requirements. The unsanitary conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation.  Bernhart conceded in his testimony that he has suffered no serious physical injury or illness caused by the allegedly unsanitary conditions, only minor breathing discomfort.  He acknowledged that his preexisting Hepatitis C and liver problems had manifested themselves <u>before</u> his exposure to mold and unsanitary conditions in OPP, and that he had been appropriately treated for those conditions.  Thus, he alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).

Bernhart's allegations about mold or dirty conditions fail to establish constitutional violations.  See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138

26

F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

As the Fifth Circuit recently held in Brauner v. Coody, No. 12-314, 2015 WL 4393788, at *4-5 (M.D. La. July 17, 2015) (Africk, J.), no constitutional violation occurs when showers are cleaned twice a day with bleach, and the prisoner was provided a disinfectant spray bottle for his personal use. The court specifically noted that failure of prison officials to maintain germ-free showers is not cruel and unusual punishment.

In two cases, the Fifth Circuit has held that extreme, virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment. In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in Davis, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was,

"according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" Davis, 157 F.3d at 1004, 1006.  The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" Id. at 1006 (quoting Hutto v. Finney, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days.  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Bernhart do not rise to the level of a constitutional violation.  The conditions he experienced in OPP were neither virtually permanent nor an extreme deprivation of the type that might offend the Constitution, and he suffered no physical injuries or serious ailments as a result of any allegedly unsanitary conditions.  Moreover, unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir.), cert. denied, 114 S. Ct. 393 (1993) (emphasis added); accord White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993), cert. denied, 114 S. Ct. 931 (1994).  Neither Bernhart's medical records nor his testimony support the conclusion that any of the minor physical conditions he described were serious or even related to any unsanitary condition.

28

Any harm that Bernhart may have suffered by the minor maladies he describes in this case were not serious and did not rise to the level of a constitutional violation.  See, e.g., Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists with some bleeding not serious); Griffin v. DeRobertis, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious); cf. Barker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd, 19 F.3d 37 (11th Cir. 1994) (pneumonia is serious medical need). Certainly, plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).

Bernhart has not alleged sufficiently serious harm resulting from these problems to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement.  Under these circumstances, plaintiff has failed to state a claim of constitutional magnitude, and his claim concerning unsanitary

conditions of his confinement must be dismissed for failure to state a cognizable constitutional claim under Section 1983.

IV.    STRIP SEARCH

Bernhart alleges that he was improperly strip-searched under Lt. Givens's supervision when all the inmates housed on the tier with him were taken outdoors to the recreation area, where all the inmates were told to strip while in the yard, causing them all to suffer "indecent exposure."  He confirmed that the search was conducted after the two stabbing incidents about which he also complains.  The Fourth Amendment provides the correct standard for evaluating inmate claims of unconstitutional body searches. Moore v. Carwell, 168 F.3d 234, 237 (5th Cir. 1999) (citing Elliott v. Lynn, 38 F.3d 188, 191 n.3 (5th Cir. 1994); United States v. Lilly, 576 F.2d 1240 (5th Cir . 1978)).

"A state offender's Fourth Amendment protections are greatly limited in [the] context of prison situations.  'A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated.  He thus loses those rights that are necessarily sacrificed to legitimate penological needs.'"  Tuft v. Chaney, No. H-06-2529, 2010 WL 420003, at *7 (S.D. Tex. Jan. 29, 2010) (Miller, J.) (quoting Moore, 168 F.3d at 236-37).

> It is well-settled that a strip search . . . of a prison inmate, which includes the exposure of body cavities for visual inspection, is not per se unreasonable under the Fourth Amendment.  Nor must the search be predicated upon probable cause.  Rather, the Fourth Amendment requires only that searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed.  As

articulated in this context by the United States Supreme Court in <u>Bell v. Wolfish</u>, . . . :

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

. . . .  The Fifth Circuit has interpreted this statement of reasonableness as striking a balance in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner.

<u>Graves v. Cain</u>, No. 09-0705-JJB-CN, 2010 WL 2134308, at *4-5 (M.D. La. Apr. 16, 2010) (Noland, M.J.), <u>report & recommendation adopted</u>, 2010 WL 2243274 (M.D. La. May 26, 2010) (Brady, J.) (footnote omitted) (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979)) (citing <u>Hutchins v. McDaniels</u>, 512 F.3d 193 (5th Cir. 2007); <u>Elliott</u>, 38 F.3d at 193; <u>Watt v. City of Richardson Police Dept.</u>, 849 F.2d 195, 196 (5th Cir. 1988); <u>Hay v. Waldron</u>, 834 F.2d 481, 485 (5th Cir. 1987); <u>Thorne v. Jones</u>, 765 F.2d 1276 (5th Cir. 1985); <u>United States v. Lilly</u>, 576 F.2d 1240 (5th Cir . 1978)) (additional quotations omitted).  Under the Fifth Circuit's standards, a prison official's burden of proving the reasonableness of a strip search "is a light burden because an administrator's decisions and actions in the prison or jail context are entitled to great deference."  <u>Tuft</u>, 2010 WL 420003, at *7 (citing <u>Elliott</u>, 38 F.3d at 191).

In the instant case, Bernhart testified and stated in his written submissions that he and the other inmates housed with him were strip searched <u>after</u> the two stabbing

incidents he described had occurred.  Thus, it is clear that the OPP officials who conducted the search had been presented with a situation giving rise to legitimate prison security concerns.  In similar cases of either random or targeted strip searches, in circumstances implicating the legitimate penological needs of preserving order, discipline, security and safety, the courts have held that prisoners failed to assert any constitutional violation. E.g., Brown v. Blaine, 185 Fed. Appx. 166, 2006 WL 1716772, at *3 (3d Cir. 2006); Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997); Elliott, 38 F.3d at 193; Covino v. Patrissi, 967 F.2d 73, 80 (2d Cir. 1992); Tyson v. Tanner, No. 08-4599, 2009 WL 2883056, at *3-4 (E.D. La. Aug. 25, 2009) (Berrigan, J.); Calhoun v. Botos, No. 08-10051, 2009 WL 612348, at *10 (E.D. Mich. Mar. 6, 2009).

In addition, addressing plaintiff's complaint of indecent exposure, the Fifth Circuit has held that "the mere presence of female officers during a strip search of prisoners during emergency circumstances did not violate the Fourth Amendment.  Moore, 168 F.3d at 236 (citing Letcher v. Turner, 968 F.2d 508 (5th  Cir. 1992) (emphasis added)). Similarly, the mere possibility that other inmates could have seen Bernhart naked in the OPP outdoor recreation area where the subject search occurred, in circumstances justified by security concerns on his tier, does not establish a constitutional violation.  In short, the actions of Lt. Givens, as described by plaintiff, do not rise to the level of a constitutional violation, and no cognizable Section 1983 claim arises from these facts.

Significantly, Bernhart confirmed that he suffered no physical injury as a result of the strip search.  His claims for relief include monetary compensation.  Record Doc. No. 5 (Complaint at ¶ V).  The Prison Litigation Reform Act of 1996 includes the following requirement in 42 U.S.C. § 1997e(e):  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury." (Emphasis added).  Bernhart complains that the strip search should have been conducted indoors, not outside where other inmates were looking out the windows of their cells, causing him to suffer "indecent exposure, " but he does not allege physical injuries of any kind as a result.

The Fifth Circuit has consistently enforced the statutory physical injury requirement for prisoners who seek compensatory damages for intangible harm, such as has been alleged by Bernhart in this case.  Hutchins v. McDaniels, 512 F.3d 193, 196 (5th Cir. 2007); Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).  The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'"  Alexander v. Tippah County, 351 F.3d 626, 631 (5th Cir. 2003) (citing Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar, 112 F.3d at 193); accord Mayes v. Travis State Jail, No. 07-51086, 2008 WL 4657078, at *1 (5th Cir. Oct. 22, 2008).  In this case, Bernhart admittedly suffered no physical injuries of any

33

kind resulting from the strip search.  For all of the foregoing reasons, plaintiff's complaint asserting Section 1983 claims based upon the subject strip search must be dismissed for failure to state a claim upon which relief can be granted.

V.     NO CONSTITUTIONAL RIGHT TO ARP/GRIEVANCE RELIEF

Bernhart testified that defendants had responded to the grievances he filed concerning the stabbings, the mold and the strip search through the OPP inmate grievance procedure, but that he was not satisfied with the response.  This complaint fails entirely to state a claim for relief under Section 1983.

The Fifth Circuit has held that an inmate "does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction.  As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."  Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005) (citing Sandin, 515 U.S. at 484; Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995)); accord Bell v. Woods, 382 F. App'x 391, 392 (5th Cir. 2010); Johnson, 360 F. App'x at 532.  "Additionally, [as discussed above, plaintiff] could not show any injury from the failure [adequately] to consider his grievances because the alleged [actions of jail officials of which] he complained . . . in the grievances did not implicate his constitutional rights."  Bell, 382 F. App'x at 392.

In this case, Bernhart commenced the prison's ARP by filing grievances on several occasions concerning his claims arising from the incidents that are the subject of this

34

lawsuit.  In the constitutional sense, an ARP, at most, may be viewed as a means of effectuating plaintiff's First Amendment right to petition the government for redress of grievances.  In this instance, plaintiff's grievances were received and processed through the ARP, although the ARP did not end with the results that he wanted.  The Fifth Circuit has held that allegations that a prison official has failed adequately to follow particular prison rules, regulations or procedures, such as an ARP, cannot support a Section 1983 claim, without an independent constitutional violation.  McFaul v. Valenzuela, 684 F.3d 564, 579 (5th Cir. 2012) (citing Dist. Attorney's Ofc. v. Osborne, 557 U.S. 52, 67 (2009); Jackson, 864 F.2d at 1251-52; Neuwirth v. La. State Bd. of Dentistry, 845 F.2d 553, 557 (5th Cir. 1988)); Patel v. Haro, 470 F. App'x 240, 244 (5th Cir. 2012); Stanley v. Foster, 464 F.3d 565 (5th Cir. 2006).  "The failure of the prison to follow its own policies, including a failure to address prisoner grievances, is not sufficient to make out a civil rights claim."  Richardson v. Thornton, 299 F. App'x 461, 463 (5th Cir. 2008) (citing Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996)).

For these reasons, Bernhart's dissatisfaction with defendants' responses to his ARP grievances fails to state a cognizable Section 1983 claim.

VI.   NO LIABILITY OF THE SHERIFF

Bernhart has named Sheriff Gusman as a defendant, although he has made no allegations that Sheriff Gusman was personally involved in any of the actions about

which he complains.  Thus, he appears to name the sheriff as a defendant based solely upon his official responsibilities over his deputies and the parish jail facility.

"There is no respondeat superior liability under section 1983."  Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrections Corp., 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold the sheriff liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation."  Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that the sheriff was personally involved in any acts causing the deprivation of his constitutional rights

or that a causal connection exists between an act of the sheriff and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983. Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929. No such unconstitutional custom, usage or policy has been alleged in this case.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[7]

New Orleans, Louisiana, this ___16th___ day of November, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

**CLERK TO NOTIFY PLAINTIFF**
**AT THE FOLLOWING ADDRESS:**

**KERMITT JOE BERNHART; D.O.C. #583245**
**HUNT CORRECTIONAL CENTER**
**P. O. BOX 174**
**ST. GABRIEL, LA  70776**

---

[7]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.